IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Criminal No. **3:23-CR-109-L** |
| | § | |
| **STACY LAMONT STEVENSON, JR.** | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court are Defendant Stacy Lamont Stevenson, Jr.'s Motion to Suppress Evidence (Doc. 37), filed July 5, 2024; and Motion for Leave to File Reply (Doc. 51), filed October 16, 2024. The court **denies** both Motions (Docs. 37, 51) for the reasons herein explained.

I.      **Defendant Stevenson's Motion to Suppress (Doc. 37)**

A.  **Background**

On March 21, 2023, a three-count Indictment (Doc. 3) was filed against Stacy Lamont Stevenson, Jr. ("Defendant Stevenson") in this case, charging him with Conspiracy to Possess with Intent to Distribute a Controlled Substance (methamphetamine) in violation of 21 U.S.C. § 846 (Count One); Possession with Intent to Distribute a Controlled Substance (cocaine) in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count Two); and Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A)(i).

Defendant Stevenson seeks to suppress the following evidence that was obtained during searches conducted prior to and during his arrest on November 16, 2022: (1) cellular telephone location evidence acquired via "warrants obtained on November 11, 2022"; (2) evidence discovered on November 16, 2022, during the execution of a search warrant at Apartment 1040, located in the Villas at La Risa Apartments, 12825 Jupiter Road, Dallas, Texas 75238

("Apartment 1040"), including approximately 500 grams of narcotics and two firearms; (3) the keys seized from his person after his arrest later the same day on November 16, 2022, at the Dallas County Courthouse; (4) evidence seized after his arrest on November 16, 2022, during a search of his blue 2020 Dodge Charger located in the parking lot of the Dallas County Courthouse, including a garage door opener for 1811 Marquette Road, Princeton, Texas 75407 ("1811 Marquette"); and (5) unspecified evidence found at 1811 Marquette Road during the execution of a search warrant on November 16, 2022.

With respect to each allegedly improper searches conducted pursuant to warrants and corresponding evidence sought to be suppressed, Defendant Stevenson requests a "*Franks* hearing" pursuant to *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978), based on his contention that law enforcement made false statements under oath knowingly and intentionally, or with reckless disregard for the truth to obtain the warrants at issue. In addition, he contends that an evidentiary hearing is necessary to resolve certain issues in his Motion to Suppress.

The Government filed a response in opposition to the Motion to Suppress, contending that the court should deny Defendant Stevenson's requests to suppress evidence because he has not shown that any of the evidence in question was obtained in violation of his Fourth Amendment rights, and, in any event, the evidence is admissible under the good-faith exception to the exclusionary rule. The Government also contends that Defendant Stevenson has not established his entitlement to a hearing.

### B. Motion to Suppress Legal Standard

The Fourth Amendment of the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Carpenter v. United States*, 585 U.S. 296, 303 (2018). "The 'basic purpose of this

Amendment,' our cases have recognized, 'is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials.'" *Id.* (quoting *Camara v. Mun. Ct. of City and Cnty. of San Francisco*, 387 U.S. 523, 528 (1967)). "The proponent of a motion to suppress has the burden of establishing that his . . . Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978) (citations omitted). Warrantless searches "are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnote omitted)); *United States v. Kelly*, 302 F.3d 291, 293 (5th Cir. 2002) (explaining that, under the Fourth Amendment, "[w]arrantless searches and seizures are 'per se unreasonable unless they fall within a few narrowly defined exceptions.'") (quoting *United States v. Roberts*, 274 F.3d 1007, 1011 (5th Cir. 2001)). "'[I]f a defendant produces evidence that he was arrested or subject to search without a warrant, the burden shifts to the government to justify the warrantless search.'" *United States v. Roch*, 5 F.3d 894, 897 (5th Cir. 1993) (quoting *United States v. de la Fuente*, 548 F.2d 528, 533 (5th Cir. 1977)). Even in situations in which the Government may bear the ultimate burden of persuasion, "the defendant must first discharge his initial burden of producing some evidence on specific factual allegations sufficient to make a prima facie showing of illegality." *Id.* at 534 (citation omitted).

### C.  Discussion

#### 1.  Cellular Telephone Location Searches and Evidence

Defendant Stevenson first contends that the evidence uncovered by law enforcement pursuant to several "cell site location warrants" that issued on November 11, 2022, should be suppressed because "the cell cite location warrants did not authorize collection of location

information" for an indefinite period or "beyond that necessary to arrest [him]"  Doc. 37 at 4. Defendant Stevenson asserts that law enforcement, therefore, exceeded the purpose of the warrants by using them and the location information obtained to further the investigation of him and build a case against him rather than arresting him as soon as possible when they first observed him during their investigation at Apartment 1040, at the Budget Inn, or 1813 Marquette Road, Princeton, Texas 75407.

Defendant Stevenson's description of the "cell site location warrants" and affidavits (attached to his Motion to Suppress), however, does not accurately depict the content of either. As the Government correctly notes, the warrants track the language of the affidavits and expressly state that they were issued because it was determined that the information that could be obtained from the tracking device for a phone number associated with Defendant Stevenson was "relevant and material to an *ongoing criminal investigation* being conducted" by law enforcement of "specified offenses" and "that probable cause exists to believe" that the prospective information obtained "will yield evidence of the crime under investigation *or* lead to the Suspect's arrest."  Doc. 37-1 at 15-16 (emphasis added).

Moreover, Defendant Stevenson fails to cite or identify any language in the warrants to show that they were limited to effecting his arrest. His suggestion that law enforcement's use of the warrants to investigate him and his movements exceeded the scope of the warrants time-wise is similarly unsubstantiated.  Defendant Stevenson admits that the warrants issued on November 11, 2022, and he was arrested only five days later.  Even assuming as he contends—that the warrants only permitted tracking for purposes of locating and arresting him—he fails to cite to any legal authority in which five days to make an arrest after receiving a warrant was considered unreasonable.  As indicated, Defendant Stevenson also contends that law enforcement should

have arrested him the first time they observed him, but he conveniently omits that this occurred only one day before his arrest.[1]   Accordingly, Defendant Stevenson has not shown that law enforcement failed to properly execute the November 11, 2022 "cell site location warrants" or that his Fourth Amendment rights were violated, and he is not entitled to suppression of the information obtained via these warrants.

### 2.   Evidence Seized During Search of Apartment 1040

Defendant Stevenson next contends that evidence discovered in Apartment 1040 during the execution of a search warrant on November 15, 2022, should be suppressed because the affidavit submitted by law enforcement to obtain the search warrant for Apartment 1040 relied on improperly obtained "cell site location" evidence.  He, therefore, asserts that "inclusion of cell site location information to support the warrant for Apartment 1040 also voids th[e] warrant [that issued on November 15, 2022, for search of Apartment 1040]." Doc. 37-1 at 6.  As this argument is premised on Defendant Stevenson's first argument above regarding the propriety of law enforcement's execution of the "cell site location" warrants and information obtained as a result of those warrants, his contention that evidence seized from the search of Apartment 1040 should be suppressed on this ground similarly fails.  Doc. 37-1 at 5.  Because Defendant Stevenson has not shown that "cell site location" warrants were improperly executed, the court need not address the Government's alternative argument that the good faith exception to the exclusionary rule applies.

---

[1] In responding to the Motion to Suppress and contention that law enforcement should have arrested him when they first observed him, the Government asserts that such observations occurred the day before or the day of Defendant's arrest. Defendant Stevenson does not dispute this. As noted, he instead conveniently omits that these observations occurred only a short time before his arrest.

**Memorandum Opinion and Order – Page 5**

### 3. Evidence Seized During Warrantless Search of 2020 Blue Dodge Charger

In the factual background section of his Motion to Suppress, Defendant Stevenson notes that the following evidence was discovered during the search of his 2020 blue Dodge Charger: $9,900 in cash, a "garage door key fob," and a traffic citation incorrectly listing his address as "1814 Marquet Road, McKinney, Texas 75070" (Doc. 37 at 2). The argument section of his Motion to Suppress dealing with the search of this vehicle is titled "Motion to Suppress Evidence in Blue 2020 Dodge Charger Vehicle," but the only evidence he contends was improperly seized is the "garage door key fob." The court's analysis, therefore, similarly focuses on this issue.

As a preliminary matter, Defendant Stevenson argues that the Government cannot rely on the canine alert to support the November 16, 2022 warrantless search of the 2020 blue Dodge Charger parked in the public garage of the Dallas County Courthouse because:

> A canine sniff is not a search, and may constitute probable cause, so long as the dog is well trained, *United States v. Place*, 462 U.S. 696, 707 (1983), and does not intrude on a property right in performing the sniff, *Florida v. Jardines*, 569 U.S. 1, 10-12 (2013). But here, the government cannot prove the dog alerted because the best evidence—the video—does not clearly show what happened. Further, it cannot show the dog was well-trained, because in fact the dog alerted (allegedly) without finding any drugs inside. This shows by a preponderance of the existing evidence that the dog was poorly trained. Further, the government cannot prove that the dog performed the sniff without touching the car, which is a trespass to chattels, and a suspicionless search and/or seizure. *See*[] *Schmidt v. Stassi*, 250 F. Supp. 3d 99, 105 (E.D. La. 2017) (when officers touch a car to obtain DNA, they perform trespass to chattels, which is a search); *see also Jardines*, 569 U.S. at 10-12 (dog sniff becomes a search when it involves a trespass to property rights).

Doc. 37 at 6-7.

Alternatively, he argues that, even assuming that law enforcement officers had probable cause to search the vehicle, "they had no right to seize the garage door key fob." Doc. 37 at 7. In this regard, Defendant Stevenson argues: The warrantless seizure of an item requires "not only [that] the item be in plain view; its incriminating character must also be immediately apparent."

*Id.* (quoting *California v. Horton*, 496 U.S. 128, 136 (1990)). In addition, he contends that "there is nothing remotely incriminating about a garage key fob" that would have permitted law enforcement to seize it.  Doc. 37 at 7 (footnote omitted).[2]

The Government, which has the burden on this issue, counters that law enforcement officers had probable cause to search the vehicle pursuant to the automobile exception to the warrant requirement, and they were entitled to seize the garage door opener under the plain view doctrine.  The Government further asserts that, because law enforcement officers had probable cause to search the vehicle before the canine sniff, the court need not address Defendant Stevenson's challenge to the canine sniff.  It, nevertheless, cites legal authority that it contends undermines Defendant Stevenson's canine-alert argument and notes that Defendant Stevenson cites no legal authority to the contrary to support his argument that: "that (1) the dog's alert must be captured on video, (2) an alert with no subsequent finding of drugs in the car shows that the dog was poorly trained, and (3) the dog sniff must be performed without the dog touching the car. Indeed, there is caselaw undermining those premises." Doc. 45 at 21 n.7.

The court agrees that Defendant Stevenson's canine-alert argument contains conclusory assertions for which no legal authority is cited and is, therefore, inadequately briefed. *See* L.R. 47.1.[3] In any event, since the Government relies on the automobile and plain view exceptions to the warrant requirement, the court's analysis also focuses on these exceptions. As the Government correctly notes, the automobile exception is a well-established exception to the Fourth Amendment's warrant requirement that permits warrantless searches of readily mobile

---

[2] In a footnote, Defendant asserts that he "makes the same argument for the keys seized upon [his] arrest" from his person.  Doc. 37 at 7 n.6.  The court addresses Defendant's contention regarding the search of his person separately later in this opinion.

[3] Local Criminal Rule 47.1 governs motion practice unless otherwise directed by the presiding judge. Local Rule 47.1 requires that an opposed motion be accompanied by a brief that sets froth the moving party's contentions of fact and/or law, and argument and authorities. L.R. 47.1(d) & (h).

**Memorandum Opinion and Order – Page 7**

vehicles parked in a parking lot not used by the defendant for residential purposes if there is probable cause to believe that the vehicle contains evidence of a crime or contraband. *See* Doc. 45 at 20 (citing *California v. Acevedo*, 500 U.S. 565, 580 (1991); *California v. Carney*, 471 U.S. 386 (1985); and *United States v. Beene*, 818 F.3d 157, 164 (5th Cir. 2016) (other citations omitted)).

As detailed in the Government's response, there is more than ample evidence here to support a finding that law enforcement had probable cause to believe that the 2020 blue Dodge Charger, which was parked in the Dallas County Courthouse public parking lot, contained evidence of a crime or contraband. The day before the search of this vehicle was conducted, law enforcement had submitted an affidavit in support of the search warrant for Apartment 1040 that contained facts regarding the 2020 blue Dodge Charger, its connection to Defendant Stevenson, and the criminal activity being investigated. The Government's response summarizes these facts as follows:

- A source of information (SOI) told law enforcement that Stevenson drove a blue Dodge Charger, (Dkt. 37-2 at 4);

- A cooperating defendant (CD) told law enforcement that Stevenson carried a large amount of narcotics in a backpack, (Dkt. 37-2 at 3);

- The CD told law enforcement that Stevenson carried a firearm, (Dkt. 37-2 at 3);

- Stevenson was a convicted felon, (Dkt. 37-2 at 5-6);

- Neighbors complained about Apartment 1040's residents, including that they heard gun[]shots and observed the occupants of Apartment 1040 sell narcotics, (Dkt. 37-2 at 5);

- The SOI [source of information] told law enforcement that Stevenson sold narcotics from rooms 205 and 207 at the Budget Inn located at 12425 E. Northwest Highway, Dallas, Texas, (Dkt. 37-2 at 4);

- Law enforcement had previously identified several individuals who sold narcotics from the Budget Inn, (Dkt. 37-2 at 8);

- Law enforcement had previously used cooperating defendants to purchase narcotics from the Budget Inn, (Dkt. 37-2 at 8);

- Historical CSLI placed the defendant near both the Budget Inn and Apartment 1040 on several occasions, (Dkt. 37-2 at 5);

- An individual admitted purchasing narcotics from Apartment 1040 more than 20 times. This individual identified Stevenson as his/her primary supplier and stated he/she usually saw Stevenson inside Apartment 1040 when he/she purchased narcotics, (Dkt. 37-2 at 7-8); [and]

- On November 15, 2022, law enforcement observed Stevenson enter the apartment complex while driving a blue Dodge Charger. Stevenson entered Apartment 1040, stayed for approximately 30 minutes, and then left in the Dodge Charger. Stevenson then drove to the Budget Inn in the Dodge Charger, parked, and entered a first-floor motel room on the east side of the building, (Dkt. 37-2 at 8)[.]

Doc. 45 at 21-22 & n.8.

Based on the evidence attached to Defendant Stevenson's Motion to Suppress, the Government further asserts that law enforcement officials were also aware that:

- Stevenson had driven the blue Dodge Charger to the Budget Inn and Apartment 1040 shortly before law enforcement had executed the search warrant at Apartment 1040 and recovered cocaine, methamphetamine, marijuana, a large sum of cash, and two firearms, (Dkt. 37-3 at 9-10);

- Drug traffickers often took steps to protect their drugs from theft by rival drug dealers, (Dkt. 37-3 at 11); [and]

- The defendant had been arrested on two state felony warrants. The warrants were related to narcotics, (Dkt. 37-3 at 10).

*Id.* at 22-23 & n.9.    Both parties also acknowledge that On November 16, 2022, law enforcement's "monitoring of cell site location information showed [Defendant] Stevenson's cellphone in the area of the Dallas County Courthouse."

The Government contends, and the court agrees that, taken together, the foregoing facts establish probable cause to believe that Defendant Stevenson was trafficking narcotics in multiple locations, including Apartment 1040 and the Budget Inn, because they establish that he was transporting narcotics between locations, often in his backpack, and he was regularly traveling between locations in the blue Dodge Charger. In addition, these facts show that Defendant Stevenson carried a firearm. Given Defendant Stevenson's participation in drug trafficking activity, it was reasonable for law enforcement to believe that he was carrying a firearm not only to protect himself, but also to protect his drug supply, and drug proceeds in the form of cash. Regardless of his reasons for carrying a firearm, he was a convicted felon and unauthorized to carry a firearm. Consequently, probable cause existed for law enforcement to believe that narcotics, firearms, and/or drug proceeds would be located in the blue Dodge Charger, and Defendant Stevenson acknowledges that he was placed under arrest at the Dallas County Courthouse for outstanding felony warrants. Doc. 37 at 2. Law enforcement's search of the 2020 blue Dodge Charger while it was parked in the Dallas County Courthouse parking lot was, therefore, lawful under the automobile exception to the warrant requirement.

Thus, the only remaining issue regarding this particular search is whether law enforcement's seizure of the garage door opener found during the search of the blue Dodge Charger was lawful under the plain view exception to the warrant requirement. Defendant Stevenson contends that law enforcement officers were not entitled to seize the garage door opener under the plain view exception because the incriminating character of the garage door opener was not immediately apparent. As noted, he argues that "there is nothing remotely incriminating about a garage key fob." Doc. 37 at 7.

As recognized by both parties, the plain view doctrine is an exception to the Fourth Amendment's warrant requirement that allows law enforcement officers to seize evidence or contraband in plain view. *Arizona v. Hicks*, 480 U.S. 321, 326 (1987). This exception applies if law enforcement officers are lawfully in a location when they see the evidence, and the item's incriminating nature is "immediately apparent." *Horton*, 496 U.S. at 136. "The incriminating nature of an item is 'immediately apparent' [when law enforcement] officers have 'probable cause' to believe that the item is either evidence of a crime or contraband." *United States v. Buchanan*, 70 F.3d 818, 826 (5th Cir. 1996) (quoting *Hicks*, 480 U.S. at 326-27). "To have probable cause, it is not necessary that the officer know that the discovered [item] *is* contraband or evidence of a crime, but only that there be a practical, nontechnical probability that incriminating evidence is involved." *United States v. Turner*, 839 F.3d 429, 433 (5th Cir. 2016) (internal quotation marks and citations omitted). "When reviewing probable cause determinations, [courts] consider the totality of the circumstances—including the officers' training and experience as well as their knowledge of the situation at hand." *Id.* (internal quotation marks and citations omitted).

Here, the court has already determined that under the automobile exception law enforcement officers were lawfully in a location when they saw the garage door opener inside the 2020 blue Dodge Charger. The Government contends that the "evidentiary nature of the garage-door opener was immediately apparent because it connected Stevenson to 1813 Marquette Road, Princeton, Texas" where he was previously observed exiting the garage to this residence Doc. 45 at 24. The Government further contends, based on the totality of the following circumstances, that law enforcement had probable cause to believe that Defendant Stevenson stored narcotics, firearms, and drug trafficking proceeds at 1813 Marquette Road:

Officers initially believed that Stevenson resided in Apartment 1040. (Dkt. 37-2 at 9.) Among other things, the CD had indicated that Stevenson lived there, apartment management and facilities identified Stevenson as the person leasing and living in the apartment, and police observed Stevenson entering and exiting the apartment. (Dkt. 37-2 at 3-4, 6, 8.)

Around the same time, officers also suspected that Stevenson was linked to 1813 Marquette Road. (Dkt. 37-5 at 9.) Prospective CSLI showed Stevenson frequented the area. (Dkt. 37-5 at 9.) Further, police observed Stevenson leave the house through the garage prior to executing the warrant at Apartment 1040. (Dkt. 37-5 at 9.) Notably, they observed, either visually or with CSLI, Stevenson leave the house, drive to the Budget Inn, then drive to Apartment 1040. (Dkt. 37-5 at 9.) At both locations, Stevenson only stayed for a short amount of time before leaving. (Dkt. 37-5 at 9.)

During the execution of the search warrant at Apartment 1040 soon after Stevenson left, police recovered cocaine, methamphetamine, marijuana, a large sum of cash, and two firearms (including one stolen firearm). (Dkt. 37-5 at 9-10.) At the conclusion of the search warrant, based on their training and experience, investigating officers believed that Stevenson used the apartment as a distribution location. (Dkt. 37-5 at 11.) Also based on their training and experience, investigating officers knew that drug traffickers commonly stored large amounts of narcotics and United States currency away from distribution locations to protect their supply from law enforcement and rival drug traffickers. (Dkt. 37-5 at 11.)

Additionally, while searching the Dodge Charger, police found a traffic citation from the city of Fairview issued to Stevenson. (Dkt. 37-5 at 10.) The citation listed Stevenson's address as "1814 Marquet Road, McKinney, Texas," further linking Stevenson to the house at 1813 Marquette Road in Princeton, Texas. (Dkt. 37-5 at 10.) And Stevenson's efforts to conceal the true address by changing the house number, city, and the correct spelling of the street's name further linked 1813 Marquette Road to criminal activity. Notably, Stevenson provided a different address altogether when interviewed by police after his arrest, further indicating that the house was in some way connected to his criminal activity. (Dkt. 37-5 at 10.)

Doc. 45 at 24-25.[4]  The Government asserts that "it was immediately apparent that the garage-door opener linked Stevenson to 1813 Marquette Road because: (1) unlike the apartment or the Budget Inn motel room, the house had a garage; and (2) police observed Stevenson leave the

_____

[4] The citations to the record in the quoted materials are to the evidence submitted by Defendant in support of his Motion to Suppress, which includes the sworn statements of law enforcement officers that were used to apply for the search warrants at issue.

garage earlier that morning." *Id.* at 25. The Government, therefore, argues that the garage-door opener's evidentiary value was immediately apparent when officers seized it from Defendant Stevenson's vehicle.

Even assuming as Defendant Stevenson contends that the incriminating nature of the garage door opener itself was not immediately apparent to law enforcement, "[t]o have probable cause, it is not necessary that the officer know that the discovered [item] is contraband or evidence of a crime"; rather, as explained, it is only necessary that "there be a practical, nontechnical probability that incriminating evidence is involved." *Turner*, 839 F.3d at 433 (internal quotation marks and citations omitted). "[C]onsider[ing] the totality of the circumstances—including the officers' training and experience as well as their knowledge of the situation at hand[,]" the court determines that the foregoing facts and circumstances articulated by the Government are sufficient to demonstrate that law enforcement believed that there was "a practical, nontechnical probability that incriminating evidence [wa]s involved" when they discovered and seized the garage door opener from the blue Dodge Charger. *See id.* Accordingly, notwithstanding Defendant Stevenson's conclusory argument to the contrary, the court determines that probable cause existed for law enforcement's seizure of the garage door opener pursuant to the plain view exception to the warrant requirement.

### 4.  Search of Defendant Stevenson's Person After His Arrest

As indicated, Defendant Stevenson asserts in a footnote that he "makes the same argument for the keys seized upon [his] arrest" as he did with respect to the warrantless seizure of the "key fob" or garage door opener—that law enforcement had no right to seize the keys because the Government cannot establish that the plain view exception to the warrant requirement applies.  As noted, Defendant Stevenson argued that, for the plain view exception to

apply, the evidence must be in plain view and the incriminating character of the evidence must be immediately apparent. It is not entirely clear from his single sentence argument, but it appears that Defendant Stevenson contends, as he did with the garage door opener, that the incriminating nature of the keys taken from his person was not readily apparent. In responding to the Motion to Suppress, the Government did not address this argument by Defendant Stevenson presumably because it was buried in a footnote and not adequately briefed. *See* L.R. 47.1. In any event, the court determines that Defendant Stevenson's plain view argument fails because the keys were indisputably seized from his person when he was arrested at the Dallas County Courthouse on November 16, 2022.

One exception "to the warrant requirement is a search incident to a lawful arrest." *Gant*, 556 U.S. at 338 (citation omitted); *United States v. Robinson*, 414 U.S. 218, 224 (1973). "[S]earches that are incident to lawful arrest are those of: the arrestee's person; any items or containers that were located on the arrestee's person at the time of the arrest; and any items or containers that were located within the arrestee's reaching distance at the time of the arrest." *McCullough v. Wright*, 824 F. App'x 281, 286 (5th Cir. 2020) (citing *United States v. Curtis*, 635 F.3d 704, 711-12 (5th Cir. 2011)). The search incident to arrest exception "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Gant*, 556 U.S. at 338 (citations omitted). A search conducted incident to arrest is limited to "the arrestee's person and the area 'within his immediate control'" that includes "the area from within which he might gain possession of a weapon or destructible evidence." *Gant*, 556 U.S. 332 at 339 (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)).

It is well established that "law enforcement officials may arrest an individual in a public place without a warrant if they have probable cause to believe that the individual committed a

felony." *United States v. Garcia*, 179 F.3d 265, 268 (5th Cir. 1999) (citing *United States v. Watson*, 423 U.S. 411, 423-24 (1976)). "Probable cause for a warrantless arrest exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. Wadley*, 59 F.3d 510, 512 (5th Cir. 1995). "When considering what a 'reasonable person' would have concluded, [courts] take into account the expertise and experience of the law enforcement officials." *Garcia*, 179 F.3d at 268 (citing *United States v. Ortiz*, 422 U.S. 891, 897 (1975)).

Although "the burdens of production and persuasion generally rest upon the movant in a suppression hearing[,] . . . if a defendant produces evidence that he was arrested or subjected to a search without a warrant, the burden shifts to the government to justify the warrantless arrest or search." *de la Fuente*, 548 F.2d at 533. The Government must prove the constitutionality of the arrest by a preponderance of the evidence. *See United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001) ("When the government searches or seizes a defendant without a warrant, the government bears the burden of proving, by a preponderance of the evidence, that the search or seizure was constitutional.").

Here, neither party disputes that Defendant Stevenson's arrest on November 16, 2022, at the Dallas County Courthouse and search of his person after his arrest was done without a warrant. Thus, the Government has the burden of establishing the constitutionality of the search based on its contention that the search of Defendant Stevenson's person was done incident to his lawful arrest. To accomplish this, the Government must establish that the arresting police officers had probable cause to arrest Defendant Stevenson, and that the search complained of by

Defendant Stevenson did not exceed the permissible constitutional limits for searches conducted incident to a lawful arrest.

The facts set forth in the Government's response to Defendant Stevenson's Motion to Suppress more than satisfy its burden of showing that law enforcement had probable cause to believe Defendant Stevenson had committed one or more felonies. It is undisputed that Defendant Stevenson was arrested on November 16, 2022, for outstanding felony warrants after the search of Apartment 1040 revealed evidence of drug trafficking. In addition, law enforcement obtained information from different sources that Mr. Stevenson carried a firearm despite his being a convicted felon; that he had been arrested on two state felony narcotic related warrants; that he carried large amounts of narcotics in a backpack; that he was a supplier of narcotics; and he was observed in Apartment 1040 while narcotics were being purchased.

These are but a few of the facts detailed in the Government's response supporting a determination that law enforcement had probable cause to arrest Defendant Stevenson on November 16, 2022. The court also notes that Defendant Stevenson does not contend that his arrest was unlawful for lack of probable cause. While he argues that the subsequent search of 1811 Marquette and the evidence seized from that residence was unlawful, the court addresses this contention below and determines that, even without the drug trafficking evidence uncovered at this location, law enforcement still had sufficient probable cause to arrest him for the reasons detailed. Because Defendant Stevenson was lawfully arrested, law enforcement had authority to search his person. It was during such a search that the Government alleges, and Defendant does not dispute, that the keys were discovered on his person and seized. Accordingly, Defendant Stevenson's contention regarding the propriety or lawfulness of the search of his person and

seizure of the keys from his person immediately after his arrest at the Dallas County Courthouse is without merit.

### 5.  Evidence Seized During Search of 1811 Marquette Road

Finally, Defendant Stevenson contends that evidence seized by law enforcement during the search of 1811 Marquette Road should be suppressed because the warrant to search this residence is "invalid."  Doc. 37 at 7.  He asserts that the search warrant is "invalid" because "it is the product of multiple illegal searches: [] the use of the illegally seized garage door key fob, the prior seizure of the fob during the car search, the rifling through the trash bins at the mouth of the garage, and the unlocking of the house with an illegally seized key." *Id.*  Defendant Stevenson further asserts that the Government cannot rely on the good faith doctrine because it cannot satisfy the following requirements that must be established when law enforcement base a warrant on a prior illegal search:

> (1) the prior law enforcement conduct that uncovered evidence used in the affidavit for the warrant must be "close enough to the line of validity" that an objectively reasonable officer preparing the affidavit or executing the warrant would believe that the information supporting the warrant was not tainted by unconstitutional conduct, and (2) the resulting search warrant must have been sought and executed by a law enforcement officer in good faith as prescribed by [*United States v.*] *Leon*[, 468 U.S. 897 (1984)].

*Id.* (quoting *United States v. Massi*, 761 F.3d 512, 528 (5th Cir. 2014)).[5]

---

[5] In *Massi*, the court explained as follows regarding the good faith exception alluded to in Defendant Stevenson's Motion to Suppress:

> The good faith exception to the exclusionary rule provides that "evidence obtained during the execution of a warrant later determined to be deficient is nonetheless admissible if the executing officer's reliance on the warrant was objectively reasonable and made in good faith." Applying the good faith exception does not resolve whether a constitutional right has been violated; it simply is a judicial determination that exclusion of evidence does not advance the interest of deterring unlawful police conduct. In effect, the good faith exception limits the remedy of exclusion where "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion."

*Massi*, 761 F.3d at 525 (citations omitted).

**Memorandum Opinion and Order – Page 17**

Defendant Stevenson argues that the Government cannot satisfy the requirements for the good faith exception because:

First, the warrant to search 1811 Marquette was a product of the warrantless use of the fob to open the garage door. That use of the fob represents a search of the house, because it reveals the interior of the garage, the operation of the garage, and the location of Mr. Stevenson's residence; it is also a further seizure of the fob and a seizure of the home because it is a trespass to chattels—it invades a property right. Even if officers had the right to possess the fob—which they did not—they did not have the right to use it or to open the garage door. The warrant depends on the fact that the door opened. If the officers had not used the fob [in executing the earlier search warrant for 1813 Marquette next door], they would not have known that Mr. Stevenson lived at 1811 Marquette and would not have sought that warrant. This illegality taints the warrant and defeats the good faith doctrine: no reasonable officer could have thought the use of the garage fob was lawful, even if it were lawfully possessed, and it was omitted from the warrant. *See Massi*, 761 F.3d at 528.

Additionally, the warrant obtained by the police to search 1811 Marquette depended on the officer's possession of Mr. Stevenson's garage key fob. If the officers did not possess that item at the time, they could not have opened the garage, and [they] would have lacked probable cause to believe that Mr. Stevenson had any connection therewith. This would have defeated probable cause that it contained contraband. The warrant is invalid as the product of an invalid seizure, and, separately, because the officers omitted the illegal nature of the garage fob seizure from the affidavit, and the defense requests a *Franks* hearing. The seizure of the fob was not arguably legal, and it was not disclosed in the warrant application, defeating good faith. *See Massi*, 761 F.3d at 528.

The warrant also depended on the seizure of items from Mr. Stevenson's trash. Even assuming that Mr. Stevenson had abandoned the items in his garbage, he had not abandoned his privacy or property interests in his real property. In order to effectuate the search [of the trash bins], the officers had to intrude well onto the Mr. Stevenson's real property, approach the mouth of his garage, and root through his garbage can. An officer may not trespass beyond the ordinary license of neighbors and peddlers to effectuate investigative activity, even if that activity is not in itself a search. *See Jardines*, 569 U.S. at 8-9; *Schmidt v. Stassi*, 250 F. Supp. 3d 99, 105 (E.D. La. 2017) (after *Jardines*, abandonment does not defeat fourth amendment claim if the officers have to undertake a trespass to obtain the abandoned item). Hawkers, neighbors, and solicitors may come up to one's door to ring the bell or even admire the lawn ornaments in the ordinary course of life; they do not root through the garbage at the mouth of the garage. *See Jardines*, 569 U.S. at 8-9 ("We have . . . recognized that 'the knocker on the front door is treated as an invitation or license to attempt an entry, justifying ingress to the home by solicitors, hawkers and peddlers of all kinds.' This implicit

license typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave. . . . But introducing a trained police dog to explore the area around the home in hopes of discovering incriminating evidence is something else. There is no customary invitation to do that.) (emphasis in original) (quoting *Breard v. Alexandria*, 341 U.S. 622, 626 (1951)). The [c]ourt need not decide whether police may still examine garbage taken to the curb, fully abandoned and sometimes even offered to scavengers on big trash day. Police may not go up to the mouth of a garage without a warrant and look through the bins. The search warrant is an invalid product of an unlawful garbage search; alternatively, it is invalid because the officers omitted the illegal nature of the garbage search from the affidavit, and the defense requests a *Franks* hearing. The search and seizure of the garbage was not arguably legal, and it was not disclosed in the warrant application, defeating good faith. *See Massi*, 761 F.3d at 528.

   The warrant also depended on the police actually walking onto Mr. Stevenson's property and then unlocking the house with an illegally seized key prior to obtaining a search warrant. This is a clear search, and warrantless. Even if the key was legally seized, the police were not permitted to unlock a house without first obtaining a warrant. This was not arguably legal, so there is no cause to apply the good faith doctrine. *See Massi*, 761 F.3d at 528.

   Finally, in order to obtain a search warrant for 1811 Marquette, Officer Wallace included cell site location information. As laid out above, the cell site location warrants were not properly executed. As such, inclusion of cell site location information to support the warrant for Apartment 1811 also voids this warrant. *See Massi*, 761 F.3d at 528.

Doc. 37 at 7-9.

   The court has already addressed Defendant Stevenson's contentions regarding law enforcement's execution of the "cell site location" warrants and law enforcement's seizure of the garage door opener from the blue Dodge Charger and the keys from his person, and it explained why these arguments are unavailing and do not support suppression. The court's analysis of Defendant Stevenson's suppression argument regarding the search of 1811 Marquette, therefore, focuses on his remaining contentions, including whether: (1) law enforcement's use of the previously seized garage door opener while executing the search warrant for 1813 Marquette amounted to an unconstitutional warrantless search of 1811 Marquette that invalidated the

subsequent warrant to search 1811 Marquette and undermined any argument by the Government regarding the good faith exception; (2) the search warrant for 1811 Marquette depended on the warrantless, illegal seizure of items from his trash bins, which according to Defendant's evidence (photos), were situated in the driveway in front of the house to the left side of the exterior of the garage door; and (3) issuance of the warrant to search 1811 Marquette depended on police officers walking onto his property (1811 Marquette) and using the previously seized keys to unlock the door to his house (1811 Marquette) before obtaining the search warrant for this property, which he argues amounted to a warrantless search of the house.

The factual background section of Defendant Stevenson's Motion to Suppress alleges as follows regarding the events leading up to law enforcement obtaining the search warrant for 1811 Marquette:

> Later on November 16, 2022, the same day of Mr. Stevenson's arrest and search of his vehicle, a search warrant issued for 1813 Marquette Road, Princeton, Texas 75407. Exhibit 3. The basis of the warrant included information from Apartment 1040's search warrant [that was executed earlier on November 16, 2022] along with a single surveillance observation from 1813 Marquette Road, additional cell site location information, surveillance of Mr. Stevenson, information regarding Mr. Stevenson's arrest and vehicle search, and public database research. Officer [Thomas] Wallace provided the affidavit for this warrant also.

> **On November 16, 2022, when officers executed the search warrant [for 1813 Marquette]** and attempted to open 1813 Marquette with the key seized from Mr. Stevenson's person upon his arrest and the garage door key fob seized from his vehicle search, both did not open the home. Nevertheless, the officers persisted and entered the home. The house was empty.

> Upon the officers exiting house 1813, Officer Wallace spoke with another officer and this officer confirmed that they were at the correct house and that he was 100% certain that it was at this house that they surveilled Mr. Stevenson and the blue 2020 Dodge Charger. Exhibit 4.

> **The garage door key fob was then attempted again by officers and the garage for 1811 Marquette Road opened.** Officers encroached on the property and attempted the key seized from Mr. Stevenson's person in the door for 1811

Memorandum Opinion and Order – Page 20

Marquette and unlocked the door. Officers encroached on the property further and searched through the trash bins located at the mouth of the garage. They found documents in the trash bins with Mr. Stevenson's name on it. Officer Wallace then informed another officer of their findings. ***That officer informed Officer Wallace that they should not search [] 1811 Marquette yet.*** Shortly thereafter, Officer Wallace turned off his camera. . . .

> ***The officers then requested another search warrant—for 1811 Marquette*** Road, Princeton Texas 75407 this time—and were granted a warrant. Exhibit 5. ***The basis of the warrant included information from*** the search warrants for Apartment 1040 and 1813 Marquette, along with information regarding the fruitless search of 1813 Marquette, ***the use of the garage door key fob on 1811 Marquette Road***, public database research, and Officer Wallace's suspicion that Mr. Stevenson parked his blue 2020 Dodge Charger at 1813 Marquette but resided or used 1811 Marquette. . . . [T]he encroachment onto the property to unlock 1811 Marquette and search the trash bins was omitted from the search warrant affidavit despite their obvious significance to the officers' conclusion that Mr. Stevenson resided at that location. Officer Wallace provided the affidavit for this warrant as well.

Doc. 37 at 3-4 (emphasis added).[6]

> a. *Information obtained from allegedly unlawful search of trash bins and use of house key in door lock did not invalidate subsequent search warrant obtained for 1811 Marquette.*

The Government disputes that the key turn or search of trash bins at 1811 Marquette amounted to illegal searches; however, as the Government points out, and Defendant acknowledges, the search warrant obtained by law enforcement for 1811 Marquette is *not* the product of the trash-bin searches or testing the key in the door lock because law enforcement did not rely on either of these to obtain the search warrant for 1811 Marquette. Thus, the Government argues, and the court agrees, that any information obtained as a result could not

---

[6] Not included in this quote from Defendant Stevenson's Motion to Suppress is defense counsel's argumentative and unsupported commentary that "[o]f course, we can only draw reasonable inferences as to why he chose this moment to disable the camera." Doc. 37 at 3. Also not included is defense counsel's argumentative comment that it was "remarkabl[e]" that the warrant affidavit did not rely on law enforcement's use of Defendant Stevenson's key(s) to unlock the front door of 1811 Marquette or search of the trash bins located in the driveway next to the garage. This commentary was excluded because it is does not advance Defendant Stevenson's position, it is based on unsupported conjecture, and it is not necessary to resolve his Motion to Suppress or arguments regarding the validity of the search warrant for 1811 Marquette. The court also notes that Defendant Stevenson's Motion to Suppress incorrectly cites to Exhibit 5 to support his statement that a search warrant for 1811 Marquette was requested and granted. Exhibit 5 pertains to the affidavit and search warrant for 1813 Marquette.

have tainted the warrant subsequently obtained for 1811 Marquette or law enforcement's reliance on that warrant.  *See* Doc. 45 at 30.  For support, the Government relies on *United States v. Restrepo*, 966 F.2d 964, 969-70 (5th Cir. 1992).

In *Restrepo*, the Fifth Circuit rejected the district court's reasoning for suppressing evidence, which bears some resemblance to the argument asserted here by Defendant Stevenson. Specifically, the district court in *Restrepo* based its decision on *Murray v. United States*, 487 U.S. 533, 540-43 (1988), in which the Supreme Court "held that a search pursuant to [a] warrant is not an independent source of the evidence seized if the police officers' 'decision to seek the warrant was prompted by what they had seen during the initial entry, or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant.'" *Restrepo*, 966 F.2d at 968 (footnote omitted).  On appeal, the Fifth Circuit in *Restrepo* disagreed, reasoning as follows regarding the independent source doctrine:

- "[W]e find no other post-*Murray* circuit cases concerning the independent source doctrine that have interpreted *Murray* as refuting their pre-*Murray* holdings that inclusion of illegally-acquired information on a warrant affidavit does not invalidate the warrant if the affidavit's other averments set forth probable cause."

- "[O]ur post-*Murray* decision in [*United States v. Register*, 931 F.2d 308, 311 (5th Cir. 1991),]  does not demand the suppression of evidence seized at Regency.  **Register did not hold that an affidavit containing tainted evidence cannot be an independent source; it held that the search warrant in that case was an independent source of evidence under *Murray* because the warrant affidavit contained no information gained in the illegal entry—as distinguished from affidavits containing false or (as here) tainted information**."

*Restrepo*, 966 F.2d at 968 (footnotes omitted and emphasis added).

Based on the foregoing, the Fifth Circuit in *Restrepo* determined that:

[T]he district court erred in concluding that *Murray* and *Register* require suppression of evidence seized at Regency in the absence of subjective proof by the government that the tainted information did not affect the decision of this

particular magistrate judge to issue the warrant. Instead, in all such cases the district court should consider whether the warrant affidavit, once purged of tainted facts and conclusions, contains sufficient evidence to constitute probable cause for issuance of the warrant.

*Id.* at 970 (citing *Register*, 931 F.2d at 311, for the conclusion that, "as affidavit contained no mention of information elicited by illegal search, [the] warrant [was] an independent source[.]").

The same result and similar reasoning apply here. As the affidavit made in support of the search warrant for 1811 Marquette contained no information or mention of any information that may have been elicited from the allegedly illegal search of Defendant Stevenson's trash bins or law enforcement's allegedly unlawful use of his keys to unlock the door to 1811 Marquette,[7] the warrant was not invalidated as a result of any such information, the absence of which could not have affected the state judge's decision to issue the warrant. *See Restrepo*, 966 F.2d at 970 (citing *Register*, 931 F.2d at 311).

Moreover, the state judge here could not have been misled by the omission of information uncovered as a result of the search of the trash bins or law enforcement's testing the key in the door lock because Defendant acknowledges that the only information uncovered was

---

[7] In a footnote, defense counsel notes as follows: "As the [c]ourt and the Federal Public Defender's Office is closed today, undersigned counsel will deliver the video exhibit to the Court and the USAO on Monday, July 8, 2024." Doc. 37 at 3 n.5. This video is designated as Exhibit 4 to Defendant Stevenson's Motion to Suppress. The placeholder for this exhibit describes the exhibit as "Exhibit 4—Tommy Wallace 13 min BWC[,] Copy submitted to the Court and USAO." Doc. 37-4. The court, however, has no record of receiving this exhibit or any video. The court also checked with the clerk of court and confirmed that no exhibit was filed with the clerk's office in support of Defendant Stevenson's Motion to Suppress. It is not uncommon for parties to provide the court with courtesy copies of materials submitted and filed in support of motions. Local Criminal Rule 49.2, though, requires that such materials must be filed with the clerk's office and "must not be sent directly to the presiding judge." The court understands that an exhibit consisting of a video cannot be electronically filed and would have to be manually filed in-person with the clerk's office. Regardless of whether materials are filed electronically or manually in-person with the clerk's office, they are not part of the official record unless filed. Rather than delaying the resolution of the Motion to Suppress, the court based its ruling on Defendant Stevenson's paper filings because Exhibit 4 is only cited in his Motion to Suppress one time, following his allegation that: "Upon the officers exiting house 1813, Officer Wallace spoke with another officer and this officer confirmed that they were at the correct house and that he was 100% certain that it was at this house that they surveilled Mr. Stevenson and the blue 2020 Dodge Charger." Doc. 37 at 3. As there is no dispute, material or otherwise, whether this accurately depicts what is portrayed in the video, the court determines that the video is not relevant to any issue that it must decide in resolving Defendant Stevenson's suppression arguments pertaining to 1811 Marquette.

**Memorandum Opinion and Order – Page 23**

cumulative information confirming that he resided at or used 1811 Marquette.[8] Thus, the affidavit was not misleading as a result of it not including this information, and Defendant points to no other evidence demonstrating otherwise, let alone evidence that the officer who submitted the affidavit omitted the information intentionally or in reckless disregard of the truth to mislead the judge who issued the warrant. Finally, even assuming that the search of the trash bins and key turn were unconstitutional as Defendant Stevenson argues, the inclusion in the affidavit of any cumulative information obtained from such allegedly illegal conduct would have been redacted and not considered in determining whether probable cause existed to search 1811 Marquette, and Defendant Stevenson has not shown that probable cause without consideration of such evidence would have been lacking. Accordingly, this argument by him with respect to the validity of the warrant to search 1811 Marquette does not support suppression.

  b. *Law enforcement's use of the garage door opener did not violate the Fourth Amendment.*

  The thrust of Defendant Stevenson's remaining argument regarding the garage door opener is that law enforcement's use of the garage door opener was: (1) "warrantless" even though used while executing the search warrant for 1813 Marquette—the location where Defendant Stevenson was previously observed exiting through a garage door; and (2) resulted in the garage door for 1811 Marquette opening, enabling law enforcement to confirm that he resided at or used 1811 Marquette instead of or in addition to 1813 Marquette as originally believed. He further asserts that, but for this confirmation, law enforcement would not have

---

[8] In this regard, Defendant Stevenson states in his Motion to Suppress that, when law enforcement searched the trash bins located in the driveway outside the garage, "[t]hey found documents in the trash bins with [his] name on it." Doc. 37 at 3. Likewise, with respect to the use of his key(s) to test the door lock, Defendant Stevenson merely asserts that this confirmed law enforcement's belief that he resided at or used 1811 Marquette. *Id.* at 4. Defendant Stevenson contends that this information was "obvious[ly] significant" and, therefore, should have been included in the officer's affidavit, but he fails to explain how the omission of cumulative information regarding his connection to 1811 Marquette (the same information he asserts was uncovered by law enforcement when they pressed the garage door opener that caused the garage door to 1811 Marquette to open rather than 1813 Marquette) was misleading or could have affected the judge's decision in issuing the warrant.

**Memorandum Opinion and Order – Page 24**

sought another search warrant for 1811 Marquette because they would not have known that he also resided at or used 1811 Marquette. As indicated, he also contends that use of the garage door opener by law enforcement constituted a search and seizure of his residence because: (1) "it is a trespass to chattels—it invades a property right"; and (2) the opening of the garage door "reveal[ed] the interior of the garage, the operation of the garage, and the location of [his] residence."  Doc. 37 at 7-8.  Defendant Stevenson cites *Massi* to support his contention that "[t]his illegality taints the warrant and defeats the good faith doctrine [because] no reasonable officer could have thought the use of the garage fob was lawful, even if it were lawfully possessed, and it was omitted from the warrant." *Id.* at 8.

The Government counters that:

> Under Fifth Circuit precedent, the evidence seized under the 1811-Marquette search warrant is admissible whe[n:] (1) the prior law enforcement conduct that uncovered evidence used in the affidavit for the warrant is "close enough to the line of validity that an objectively reasonable officer preparing the affidavit or executing the warrant would believe that the information supporting the warrant was not tainted by unconstitutional conduct," and (2) the resulting search warrant was sought and executed by a law enforcement officer in good faith as prescribed by *Leon*. *Massi*, 761 F.3d at 528.

Doc. 45 at 26.  In this regard, the Government contends that: (1) the use of the garage door opener was proper; or (2) at a minimum, law enforcement's conduct was "'close enough to the line of validity' that an objectively reasonable officer preparing the affidavit for or executing the 1811-Marquette warrant would believe that . . . [use of] the garage-door opener w[as] not tainted by unconstitutional conduct."  *Id.* at 27.  Although Defendant Stevenson only challenges the use of the garage door opener on trespass grounds, the Government contends based on the following reasoning that law enforcement's use of the garage opener while executing the search warrant for the residence next door to 1811 Marquette (1813 Marquette) did not constitute an illegal search under either a trespass *or* reasonable expectation of privacy theory:

Stevenson fails to show that the pressing of the garage-door opener constituted an illegal search. The officers pressed the garage-door opener while executing the search warrant at 1813 Marquette—a search warrant that Stevenson notably does not challenge. (Dkt. 37-3 at 10-11.) Officers are allowed to use such items like garage-door openers when executing a search warrant because such items permit the officers to execute the warrant without damaging the property through a forcible entry. *See, e.g., United States v. Estrada*, 990 F.2d 625, *1 (5th Cir. 1993) (noting that the officers used the defendant's keys to open one of the entry doors when executing the search warrant). As such, the officers lawfully pressed the button of the garage-door opener while executing the undisputedly valid search warrant for 1813 Marquette. And from this lawful position and authorized conduct, the officers inadvertently discovered that the garage-door opener activated—not 1813 Marquette's garage door—but the garage door next door (at 1811 Marquette). Such a plain-view observation of the opening of the garage-door at 1811 Marquette "involves no Fourth Amendment search." *See Horton*, 496 U.S. at 133-34 & n.4, 136 (holding that whe[n] an officer had "a prior justification for an intrusion [and] in the course of which he came across a piece of evidence incriminating the accused," the officer's observation of that evidence "generally involves no Fourth Amendment search").

Even setting aside the execution of the 1813 Marquette search warrant, caselaw indicates that the pressing of the garage-door opener did not constitute an illegal search. The Supreme Court has held that a "search" for purposes of the Fourth Amendment is either a trespass (an unauthorized physical intrusion) into an enumerated area (e.g. houses, papers, effects) for the purpose of obtaining information, *United States v. Jones*, 565 U.S. 400, 408 & n.5 (2012), or where the government's conduct violates a person's "reasonable expectation of privacy," *id.* at 406-09. The pressing of a garage-door opener is neither.

It is not a trespass because, as discussed above, the garage-door opener was validly seized, so the pressing of its button was not an unauthorized physical intrusion of the effect, and while pressing the button sent electronic signals from the garage-door opener to the garage door at 1811 Marquette, the sending of electronic signals is not a physical intrusion. *See United States v. Duncan*, No. CR 22-76, 2023 WL 2403444, at *4 (E.D. La. Mar. 8, 2023) (holding that the use of a validly seized key fob to identify the vehicle it corresponds to is not a "search" under the trespass theory); *see also Jones*, 565 U.S. at 411 (noting that the mere sending of electronic signals is not a trespass).

Additionally, the pressing of the garage-door opener did not violate Stevenson's "reasonable expectation of privacy" because it only identified the garage door and address to which the opener was connected, not any meaningful private information about the interior or contents of the garage, and Stevenson had no reasonable expectation of privacy in the identity of his garage door and address. *See United States v. Correa*, 908 F.3d 208, 218-21 (7th Cir. 2018) (holding that pushing the garage-door opener produced "only an address" and

"the defendant had no reasonable expectation of privacy in that information"); *see also California v. Ciraolo*, 476 U.S. 207, 213 (1986) (emphasizing that the Fourth Amendment does not require law enforcement officers "to shield their eyes when passing a home on public thoroughfares"); *Katz v. United States*, 389 U.S. 347, 351 (1967) ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.").

　　　　In short, the pressing of the garage-door opener was not an illegal search, and, at the very least, it was "close enough to the line of validity" that an objectively reasonable officer preparing and executing the 1811-Marquette warrant would believe it was not tainted by unconstitutional conduct.

Doc. 45 at 27-29.

　　　　The Government further contends that Defendant Stevenson's good faith argument regarding the allegedly misleading omission in the officer's warrant affidavit of the allegedly illegal search using the garage door opener also fails because:

　　　　[He] fails to show that the purported illegal seizure of the garage-door opener constituted critical information that Officer Wallace omitted with the intent to mislead or in reckless disregard of the truth. As discussed above, the garage-door opener was legally seized, and, at the very least, Officer Wallace had an objectively reasonable basis to believe that it was legally seized. Consequently, the fact that he did not state otherwise in the warrant affidavit shows neither an intentionally misleading omission nor a reckless disregard for the truth.

　　　　Further, under *Massi*, there was no misleading omission here, as even where there is a constitutional violation, the affiant is not required to say that there was a constitutional violation, but rather only to include in the affidavit the facts supporting that conclusion. *See Massi*, 751 F.3d at 531 (holding that the affidavit was not misleading where, although it did not state that the defendant had been unconstitutionally seized at the airport, it stated the factual basis for that finding (i.e., the duration of the investigation) by noting the time that the agent began working on the investigation, and the magistrate, of course, knew what time it was when he was ruling on the application). Here, Officer Wallace included in the affidavit the facts from which Stevenson contends the seizure was invalid—that the agents had located the garage-door opener "during the earlier probable cause search of the 2020 Dodge Charger," (Dkt. 37-3 at 10-11)—as Stevenson posits that the incriminating nature of a garage-door opener in his car was not immediately apparent. Thus, under *Massi*, Wallace's affidavit was not misleading.

Doc. 45 at 31-32.

**Memorandum Opinion and Order – Page 27**

The court first notes that the garage door opener was referenced in the application and affidavit to search 1811 Marquette, and Defendant Stevenson acknowledges as much in his Motion to Suppress. *See* Doc. 37 at 4 ("The officers then requested another search warrant—for 1811 Marquette . . . *The basis of the warrant included information from . . . the use of the garage door key fob on 1811 Marquette Road*[.]") (emphasis added). Defendant Stevenson instead takes issue with the fact that the warrant affidavit did not disclose the allegedly illegal nature of the way in which the garage door opener was previously seized. The court, however, has already resolved this issue and determined that the seizure of the garage door opener was not illegal and did not violate the Fourth Amendment.

Further, other than Defendant Stevenson's conclusory assertion that law enforcement's pressing and activating the garage door opener "is a trespass to chattels—it invades a property right," his Motion to Suppress contains no legal authority, argument, or analysis and minimal factual allegations explaining explain why he believes that law enforcement's activating the garage door opener while executing the search warrant for 1813 Marquette next door (that unexpectedly caused the garage door for 1811 Marquette to open) constituted an unlawful warrantless search of the garage or residence for 1811 Marquette. *Id.* at 8. This key issue upon which the Motion to Suppress is based is, therefore, woefully deficient and not adequately briefed as required by Local Criminal Rule 47.1, leaving the court to once again divine what was intended by him Stevenson in making this argument. Even assuming that the Government has the ultimate burden of persuasion on this issue, it is questionable whether Defendant Stevenson has satisfied his "initial burden of producing some evidence on specific factual allegations sufficient to make a prima facie showing of illegality." *de la Fuente*, 548 F.2d at 533 (citation omitted).

Regardless, the court determines that Defendant Stevenson's argument fails for the reasons that follow.

When adopted, the Fourth Amendment was traditionally understood to embody a particular concern regarding government trespass involving physical intrusion "upon the areas ('persons, houses, papers, and effects') it enumerates." *Jones*, 565 U.S. at 406 (footnote omitted). In *United States v. Jones*, the Supreme Court determined that this understanding was not repudiated by its holding in *Katz* or *Katz*'s focus on reasonable expectations of privacy. *Id*. at 407. After *Jones*, the Fourth Amendment is, therefore, "understood to protect against government trespass upon the areas (persons, houses, papers, and effects) it enumerates in addition to reasonable expectations of privacy." *United States v. Ramirez*, No. 22-50042, 2023 WL 5925902, at *4 (5th Cir. May 10, 2023) (quoting *Jones*, 565 U.S. at 411) (internal quotation marks omitted)). Thus, "[a] Fourth Amendment privacy interest is infringed when the government physically intrudes on a constitutionally protected area or when the government violates a person's 'reasonable expectation of privacy.'" *United States v. Turner*, 839 F.3d 429, 434 (5th Cir. 2016) (quoting *Jones*, 565 U.S. at 405-06).

Technology can sometimes involve a trespass, as was the case in *Jones*, which determined that placement of a GPS tracking device on a car constituted an unlawful trespass. *Turner*, 839 F.3d at 434 (citing *Jones*, 565 U.S. at 405). More often, though, Fourth Amendment issues concerning technology involve *Katz*'s "reasonable expectation of privacy" approach that arose from wiretapping. *Turner*, 839 F.3d at 434. The Supreme Court in *Jones* also agreed that "[s]ituations involving merely the transmission of electronic signals without [a physical] trespass would remain subject to *Katz*['s] analysis." *Jones*, 565 U.S. at 412.

Here, Defendant Stevenson does not allege that law enforcement officers were physically on his property located at 1811 Marquette when they tried the garage door opener the first or second time, and the court has determined that law enforcement's possession of the garage door opener was lawful. Defendant Stevenson instead acknowledges that law enforcement activated the garage door opener while executing the search warrant for the property next door, and this is how they inadvertently discovered that the garage door opener activated the garage door for 1811 Marquette rather than 1813 Marquette. Thus, while Defendant Stevenson argues that a trespass occurred, the court determines that the Fourth Amendment analysis involving the garage door opener is a situation "involving merely the transmission of electronic signals without trespass would remain subject to *Katz*['s] analysis." *Id.* at 412. This is so even though Defendant Stevenson alleges that law enforcement subsequently "encroached" on 1811 Marquette for the purpose of testing the key seized from his person in the front door lock and searching the trash bins next to the garage door, which would involve a different analysis if the searches had been relevant to the court's analysis. *See* Doc. 37 at 3.

Analysis of Fourth Amendment issues like the one presented here generally turns on the resolution of two questions: (1) the threshold question of whether a search has occurred; and (2) whether the search was reasonable. *See Carpenter*, 585 U.S. at 307 n.2 (distinguishing between "the threshold question whether a 'search' has occurred" from "the separate matter of whether the search was reasonable"); *Hicks*, 480 U.S. at 327 (analyzing search and reasonableness questions sequentially). Under *Katz*, a search occurs for the purposes of the Fourth Amendment "when the government violates a subjective expectation of privacy that society recognizes as reasonable." *Kyllo v. United States*, 533 U.S. 27, 33 (2001) (citing *Katz*, 389 U.S. at 361). "*Katz* posits a two-part inquiry: first, has the individual manifested a subjective expectation of privacy

in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable?" *California v. Ciraolo*, 476 U.S. 207, 211 (1986). With respect to the second inquiry under *Katz*—whether that expectation is reasonable—"[t]he test of legitimacy is not whether the individual chooses to conceal assertedly 'private' activity," but rather "whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment." *Id*. at 212 (citation omitted).

Defendant Stevenson asserts that a search took place because law enforcement's use of the garage door opener caused the garage door to 1811 Marquette to open, thereby exposing the interior of the garage. The actual focus of his challenge, however, is the information that was disclosed because of the garage door opening—information revealing that he used or resided at 1811 Marquette—which in turn was relied on by law enforcement to obtain a warrant to search 1811 Marquette.  The court agrees with the Government that Defendant Stevenson had no legitimate expectation of privacy in the identity of his garage door or address. Doc. 45 at 29 (citing *Correa*, 908 F.3d at 218-21).

Other courts have similarly concluded that there is no legitimate or reasonable expectation of privacy under the Constitution in a person's home address because such information is readily publicly available. *See, e.g., Kennedy v. City of Braham*, 67 F. Supp. 3d 1020, 1032 (D. Minn. 2014); *Bass v. Anoka Cnty*., 998 F. Supp. 2d 813, 822-23 (D. Minn. 2014); *Travis v. Reno*, 12 F. Supp. 2d 921, 925 (W.D. Wis. 1998), *rev'd on other grounds*, 163 F.3d 1000 (7th Cir. 1998); *Hurwitz v. Newton Public Schools*, #17-cv-10231-LTS, 2017 WL 3008886 at *3 (D. Mass. July 14, 2017) ("Plaintiffs' home address does not rise to the level of 'intimately personal data' protected by the United States Constitution").

Moreover, as the court has concluded that the garage door opener was lawfully seized during the search of the 2020 blue Dodge Charger, Defendant Stevenson no longer had a reasonable expectation of privacy in the garage door opener. *See United States v. Thompson*, 837 F.2d 673, 674-76 (5th Cir. 1988) (denying motion to suppress use of keys as evidence and concluding that lawfully seized keys that were later used by federal agent to open storage facility did not violate the defendant's expectation of privacy because "[o]nce property has been seized with proper justification . . . the owner no longer has a reasonable expectation of privacy with respect to that property"). Accordingly, even assuming as Defendant Stevenson contends that law enforcement's use of the garage door opener constituted a search, the court determines that it did not violate the Fourth Amendment because it did not implicate any legitimate privacy concerns. It only revealed his association with 1811 Marquette.

## II.    Defendant Stevenson's Request for *Franks* Hearing

A request for a *Franks* hearing involves the validity of affidavits submitted by law enforcement in support of a search warrant. In *Franks v. Delaware*, the Supreme Court identified the following legal standard for handling requests for such a hearing, which is common referred to as a "*Franks* hearing":

> There is . . . a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient

content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing.

*Franks*, 438 U.S. at 171-72 (footnote omitted); *United States v. Jefferson*, 89 F.4th 494, 504-05 (5th Cir. 2023) (quoting *Franks*, 438 U.S. at 171).

Defendant Stevenson makes various assertions regarding the truthfulness of the statements included in the officers' affidavits that were submitted in support of various warrant applications. The assertions, however, are not supported by his own evidence, and, in any event, such assertions alone are insufficient to establish his entitlement to a *Franks* hearing because they do not establish the "deliberate falsity" or "reckless disregard of the truth." *See id.* Additionally, Defendant Stevenson has not furnished any affidavits or sworn or otherwise reliable statements of witnesses or attempted to explain their absence. *Id.* (affirming district court's denial of request for a *Franks* hearing because the defendant failed to "point[] to any concrete evidence that could demonstrate the affiant's deliberate falsehood or reckless disregard for the truth," and the defendant did not "provide any sworn statements"). Thus, like the defendant in *Jefferson*, Mr. Stevenson has not established his entitlement to a *Franks* hearing. *See id.*

## III.    Defendant Stevenson's Request for Evidentiary Hearing

"[A]n evidentiary hearing is required on a motion to suppress only when necessary to receive evidence on an issue of fact." *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir.1983) (citation omitted). Evidentiary hearings on motions to suppress are "designed for the presentation of evidence in support of factual allegations which, if proven, would justify the relief sought." *Id.* at 738. "Evidentiary hearings are not granted as a matter of course, but are held only when the defendant alleges sufficient facts which, if proven, would justify relief." *Id.*

(citations omitted). Factual allegations must be "sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented." *Id.* (citations and quotations omitted). "General or conclusory assertions, founded upon mere suspicion or conjecture, will not suffice." *Id.* (citations omitted).

Defendant Stevenson's suppression arguments do not require the court to resolve any disputed factual issues. Instead, resolution of his Motion to Suppress turned on the court's resolution of legal issues or application of the law to undisputed facts such that no evidentiary hearing is required or necessary.

## IV.    Defendant Stevenson's Motion for Leave to File a Reply (Doc. 51)

More than three months after filing his Motion to Suppress and after the deadline for filing pretrial motions, Defendant Stevenson sought leave on October 16, 2024, to file a reply brief, which the Government opposed. Defendant Stevenson acknowledges that he received "much of the relevant canine search discovery pertaining to the blue 2020 Dodge Charger vehicle (i.e., the main video depicting the canine search on July 12, 2024," but he asserts that he did not receive needed discovery until seven days after the pretrial motion deadline expired. He, therefore, asserts that granting him leave to file a reply to address the canine search is justified because of "the late production of discovery and the resulting delay in retaining an expert." Doc. 51 at 1. The Government disputes that he did not have sufficient information before expiration of the pretrial motion deadline to make the arguments he now seeks leave to assert.

Even assuming that the video depicting the canine search was produced one week after the pretrial motion deadline, this does not adequately explain the lengthy delay of more than three months in seeking leave to file a reply to expound upon matters previously addressed regarding the canine search in Defendant Stevenson's Motion to Suppress. Moreover, the court's

analysis and resolution of the issues raised in his Motion to Suppress did not turn on the canine search, so no reply is necessary for this purpose.

Defendant Stevenson also asserts that he should be granted leave to file a reply brief because his counsel "could not reasonably anticipate some of the arguments the [G]overnment made in its response" regarding other matters. He, therefore, requests leave and thirty days to file a reply to expound on his arguments regarding cell phone location evidence and the searches of the blue 2020 Dodge Charger, Apartment 1040, and 1811 Marquette.

Again, however, Defendant Stevenson fails to explain the lengthy delay of more than three months in seeking leave to file a reply to address these matters to which the Government responded on July 19, 2024. The court also disagrees that arguments regarding these issues could not have been reasonably anticipated and adequately briefed in the first instance when Defendant Stevenson filed his Motion to Suppress. Accordingly, Defendant Stevenson has not shown good cause and leave for this purpose to file a reply is not warranted.

## V.    Conclusion

For all of the reasons discussed, the court **denies** Defendant Stevenson's Motion to Suppress Evidence (Doc. 37); **denies** his Motion for Leave to File Reply (Doc. 51); and **denies** his requests for a *Franks* hearing and an evidentiary hearing.

Having so ruled, the court **informs** the parties that the legality of any search is not a topic of discussion or reference during the criminal trial of this case. The legality of a search is a legal issue that the court resolves; the jury resolves fact issues. Accordingly, there is no reason to discuss, elicit testimony, or dispute legal issues that the court has resolved in front of the voir dire panel or the jury once it is selected.

**It is so ordered** this 6th day of February, 2025.

Sam A. Lindsay
United States District Judge